SHADY RECORDS, INC., Plaintiff,

v.

SOURCE ENTERPRISES, INC., David Mays, Raymond Scott p/k/a Ray Benzino, and Black Enterprise/Greenwich Street Corporate Growth Management LLC, Defendants.

Source Enterprises, Inc., Counterclaimant,

v.

Shady Records, Inc. and Marshall Bruce Mathers III p/k/a Eminem, Counterclaim Defendants.

No. 03 Civ. 9944(GEL).

United States District Court, S.D. New York.

June 8, 2004.

Michael S. Elkin, Thomas P. Lane, Hermann Ferre, Deborah L. Ander, Thelen, Reid & Priest, LLP, New York, NY; Londell McMillan, Frank C. Salzano, The McMillan Firm, New York, NY, for counterclaimants Source Enterprises, Mays, and Scott.

Donald N. David, Kenneth G. Schwarz, Bruce N. Lederman, Michael Korsinsky, Brian Bloom, Fischbein, Badillo, Wagner, Harding New York, NY, for counterclaim defendants Mathers and Shady Records.

## OPINION AND ORDER

LYNCH, District Judge.

In this action for copyright infringement, Shady Records, Inc. ("Shady"), a music publisher, sues Source Enterprises, Inc. ("Source"), a magazine publisher, and related defendants, claiming that Source infringed its copyrights in two pieces of recorded music. Shady claims to hold copyrights in the songs as the assignee of Marshall Mathers (a prominent recording artist professionally known as Eminem) and a co-author. Shady charges that Source, whose magazine has been critical of Mathers, infringed those copyrights by posting the two recordings, as well as the complete text of their lyrics, on its website. Source counterclaims against Shady and Mathers, claiming in turn that it holds the

rights to the songs. Mathers moves to dismiss the counterclaims as to him on various grounds, and for sanctions pursuant to Rule 11, Fed.R.Civ.P. The motion to dismiss will be granted, and the motion for sanctions denied.

## BACKGROUND

Source publishes a magazine devoted to the genre of popular music known as rap and the broader cultural movement known as hip-hop. Like several other genres of American popular music, rap originated in the African–American community. While the music is enjoyed by many people of all races, nearly all of its most popular and creative practitioners have been African–American.

Mathers is the most prominent of the handful of white hip-hop artists who have been artistically or commercially successful. Like other white musicians who have been successful in musical genres or forms pioneered by Africans or African–Americans, from Benny Goodman to Elvis Presley to Paul Simon, Mathers has been accused of exploiting black culture; he in turn has asserted his respect for his black role models and peers, and has maintained that he comes by his hip-hop success honestly, as a young man from a poor urban background who has long been associated with African–American friends, neighbors and mentors. Source's principals have been vocal critics of Mathers, and have derided his claims to hip-hop authenticity.

It was thus a matter of some significance in this on-going cultural debate when Source came into possession of a tape recording of two rap songs purportedly recorded by Mathers as a youth, before the onset of his commercial fame and success, which use crude racist invective to denigrate black women. Source loudly publicized its discovery, asserting that the emergence of these youthful recordings

proved its point about Mathers's exploitative relation to black people and black culture. Mathers apologized for what he described as youthful indiscretions occasioned by romantic disappointment.

It is for fans of hip-hop, and not for this Court, to decide what if anything this episode means for their opinions of Mathers as a man and as an artist. The First Amendment fully protects Mathers's musical commentaries on life, his critics' attacks on him and his music, and everyone else's right to listen to the music or not and form his or her own opinions. But the controversy over Mathers, his music; and his relation to black culture helps explain the bitterness surrounding what would otherwise be a rather straightforward copyright case.

In support of its journalistic scoop and critical commentary, Source chose to make the sounds and texts of the allegedly racist recordings available to its public in their entirety on its website. While acknowledging Source's right to make fair use of the recordings in reporting the news and expressing its opinions of Mathers's life and work, Shady brought this action, maintaining that Source's publication of the entirety of the recordings and lyrics went beyond fair use, and infringed its copyright.

Shady sought and obtained a temporary restraining order from this Court prohibiting Source's use of more than a limited portion of the recordings. A consolidated trial on Shady's motion for a preliminary injunction and on the merits of the underlying action has been scheduled. In the meantime the parties have skirmished on a number of fronts, including the precise contents of the restraining order that remains in place, various discovery issues, and a contempt motion in which Shady contends that Source deliberately failed to comply with the Court's order. That mo-

tion is addressed in a separate Opinion, also issued today.

In addition to answering the complaint, Source counterclaimed, seeking a declaratory judgment that *it* owned the rights to the songs, deriving its ownership from yet another purported co-author. Shady has answered these counterclaims, which, insofar as they affect Shady, are simply the flip side of Shady's own claims. The eventual trial of the case will determine, among other things, which party has a valid copyright in the songs. Mathers, however, moves to dismiss the counterclaims as to him. That motion is the subject of this opinion.

## DISCUSSION

### I. STANDARD FOR MOTION TO DISMISS

In the context of a motion to dismiss, the Court accepts "as true the facts alleged in the complaint," *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699–700 (2d Cir.1994), and may grant the motion only if "it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief." *Thomas v. City of New York*, 143 F.3d 31, 36 (2d Cir.1998) (internal citations omitted). The court must view the pleading in the light most favorable to the non-moving party, and resolve all doubts in his or her favor. *Albright v. Oliver*, 510 U.S. 266, 267, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). The "issue is not whether [the claimant] will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (internal quotation marks and citations omitted). When deciding such a motion, the Court may consider documents attached to the complaint as exhibits or incorporated in it by refer-

ence, and such facts as are suitable for judicial notice pursuant to Fed.R.Evid. 201. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir.1991).

## II. CLAIMS AGAINST MATHERS

### A. *Copyright Claims*

■ The first three counterclaims seek declaratory judgments (1) that Source is the owner of the copyright in the recordings; (2) that the copyright registrations filed by Shady are invalid due to a fraud on the copyright office; and (3) that Shady's copyrights are unenforceable because of misuse or abuse of copyright. All of these claims either assert Source's rights in the works in question or seek to invalidate Shady's claims to them. Mathers, however, asserts no rights in the works, nor does Source allege that he does. The copyright registrations that are challenged by Source were filed by Shady, a corporation, not by Mathers, and the complaint alleges that Mathers has assigned whatever rights he may once have had to Shady. There is thus no case or controversy between Source and Mathers, as it is not alleged that he asserts any interest in the material disputed between Source and Shady.

Source's counterclaims challenge the validity of the copyrights obtained by Shady. But the copyright applications that are at the core of the counterclaims were unquestionably filed on behalf of Shady (*see* Ander Decl. Ex. 1), as was the instant lawsuit, which Source claims was a part of an effort to suppress its journalistic criticism of Mathers. (*See* Countercl. ¶ 32.) The Declaratory Judgement Act, as Source itself argues, is intended "to settle legal rights and remove uncertainty and insecurity from legal relationships." (D. Br. 9, quoting *Beacon Const. Co., Inc. v. Matco Elec. Co., Inc.*, 521 F.2d 392, 397 (2d Cir. 1975).) Here, the only legal rights at issue

concern the ownership of the copyright to the songs, and the only uncertainty and insecurity surrounding those rights stems from the competing claims of Shady and Source to own the copyright. Mathers is not a contestant in that dispute, and there is no basis for involving him as a defendant.

Source makes two arguments that Mathers is nevertheless a party in interest in these matters. First, Source points to the fact that the lawyer filing the copyright application, Eric Schwartz, stated that he did so as the "duly authorized agent of the Author (Mathers)" as well as of Shady (*see* Ander Decl. Ex. 1), and that the application was false and misleading. But Source's counterclaims seek relief that has no purchase against Mathers. In each of the first three claims, the relief sought is a declaration either of Source's affirmative rights in the works or of the invalidity of Shady's claims to rights of its own. Whatever Mathers may have done, as a matter of historical fact, that contributed to the allegedly fraudulent registration of a copyright by Shady, it is undisputed that Mathers does not assert a copyright in the works. Whatever rights he may once have claimed have been transferred to Shady, and Source's attack on those rights, if successful, will establish Source's rights and extinguish Shady's. Whether or not the person filing the application acted in some way as an agent of Mathers, the fact is that the application sought a copyright on behalf of Shady, not Mathers, as the "copyright claimant." (Ander Decl. Ex. 1, ¶ 4.) Thus, even assuming that Mathers or someone acting as his agent engaged in some misconduct in connection with the copyright application, Source seeks no meaningful relief against Mathers.

Second, Source argues that "[b]ecause [it] has pled that [Mathers] controls Shady, and this Court must assume that this alle-

gation is true for purposes of this motion, the declaration of rights and legal relations issued by this Court should apply not only to Shady but also to [Mathers]." (D.Br.10.) This is a complete non sequitur. It is elementary that a corporation is a separate legal person from its officers, directors or shareholders, and that those individual persons are not liable for the acts of the corporation simply because they can be said to "control" it. *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S.Ct. 2087, 150 L.Ed.2d 198 (2001); *United States v. Bestfoods*, 524 U.S. 51, 61–62, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998); *Burnet v. Clark*, 287 U.S. 410, 415, 53 S.Ct. 207, 77 L.Ed. 397 (1932). Source makes no allegations that can be construed as adequate to pierce the corporate veil or otherwise make individual controlling persons liable for any wrong done by the corporation.

Accordingly, the copyright counterclaims against Mathers must be dismissed.

### B. *Unjust Enrichment*

■ Source's fourth counterclaim seeks damages from Mathers for unjust enrichment. Unjust enrichment, however, is not a catch-all claim for anyone who believes that another has acted unjustly. Rather, it is a specific equitable cause of action that can be asserted when one party, in the absence of contract, receives a benefit at the expense of another without providing adequate compensation, and equity and good conscience require restitution. What arises is a quasi-contractual obligation to make restitution for such benefits. *Dolmetta v. Uintah Nat. Corp.*, 712 F.2d 15, 20 (2d Cir.1983); *Bradkin v. Leverton*, 26 N.Y.2d 192, 196, 309 N.Y.S.2d 192, 257 N.E.2d 643, 645 (1970). Source has not alleged facts that state a claim of this kind against Mathers.

■ Source argues that its allegations are adequate because it asserts, without further specification, that Mathers has received an unspecified "benefit" from the actions described in the counterclaims (Countercl.¶¶ 49, 76), that he has not compensated Source for that benefit (*id.* ¶ 77), and that he should not in equity be permitted to retain that benefit (*id.* ¶ 78). Neither in these wholly abstract and conclusory paragraphs, nor anywhere else in the counterclaims, does Source identify what that benefit might be, or how it can be said to have been obtained at the expense of Source. Nor are its motion papers more enlightening, suggesting only that what benefits, if any, Mathers received "should be determined through discovery." (D.Br.18.) This will not do. Source has not merely failed to identify the amount or value of some benefit—a matter of detail that can be left for later evidentiary development. Rather, it has entirely failed to explain how it can be said to have conferred any benefit at all on Mathers for which it could be entitled to compensation.

Source's one speculation about the kind of benefits Mathers "presumably" received only confirms its failure to state an unjust enrichment claim. In its motion papers, Source suggests, as a mere possibility, that Mathers may have obtained "the protection of his image, name, likeness and reputation" by the actions alleged in the counterclaims. (D.Br.18.) But nothing in Source's complaint indicates how such intangible benefits were achieved, what would be unjust about Mathers's obtaining them, or how those benefits were conferred by Source or at Source's expense. As Source recognizes, an equitable claim in unjust enrichment sounds in "quasi-contract." (D.Br.17.) There is nothing quasi-contractual about the relations between Mathers and Source. At most, Source alleges that Mathers assigned his copyright claims to Shady, and caused Shady to seek

a copyright that Source argues is invalid, actions that now form the basis of Shady's lawsuit. That does not state a claim for unjust enrichment.

## III. SANCTIONS MOTION

██ Not content with moving to dismiss the counterclaims, Mathers also moves for sanctions against Source and its attorneys. The Federal Rules of Civil Procedure forbid an attorney from filing a pleading without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law; sanctions may be imposed for violations of that requirement. Fed. R.Civ.P. 11(b)(2), (c); *see also Caisse Nationale de Credit Agricole–CNCA, New York Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir.1994) ("An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an 'objective standard of reasonableness,' it is clear that there is no chance of success. . . ."). Mathers argues that the counterclaims asserted against him are patently frivolous and sanctionable.

The sanctions motion, however, simply reiterates the same arguments addressed to the merits of the motion to dismiss, eliciting from defendants yet another filing that repeats the same arguments made in opposition to that motion, coupled with an extensive discussion of the factual and legal investigations made by counsel before filing the counterclaims. Mathers does not articulate any further ground for believing that they were brought in bad faith or without adequate investigation. Contrary to Mathers's argument, the counterclaims are merely without merit, not frivolous or sanctionable. Source's objections to Shady's copyright claims may ultimately prove to be without merit, as Mathers

contends. (Sanctions Br. 7 n. 5.) As of now, however, they remain in the case, and Shady has not challenged the legal viability of the counterclaims as applied to it. Source's complaint against Mathers makes the plausible factual assertion (supported in part by Schwartz's representations, in filing the copyright, that he acted as agent for Mathers) that Mathers played a part in that conduct, and contends, not patently unreasonably, that his alleged involvement warrants making him a party to the claims it makes against Shady. The Court has concluded that this contention is incorrect as a matter of law. It does not follow that Source's arguments are frivolous or that they were made without adequate investigation or a good faith basis.

## CONCLUSION

The motion to dismiss the counterclaims as to Mathers is granted. The motion for sanctions is denied.

SO ORDERED.