SHADY RECORDS, INC., Plaintiff,

v.

SOURCE ENTERPRISES, INC., David Mays, and Raymond Scott p/k/a Ray Benzino, Defendants.

No. 03 Civ. 9944(GEL).

United States District Court, S.D. New York.

March 23, 2005.

See also 2005 WL 14920.

Donald N. David, Bruce N. Lederman, Fischbein Badillo Wagner Harding LLP, New York, NY, for Plaintiff Shady Records, Inc.

Michael S. Elkin, Thomas P. Lane, Deborah L. McNamara, Thelen Reid & Priest LLP, New York, NY; L. Londell McMillan, Frank C. Salzano, The McMillan Firm, New York, N.Y. for Defendants Source Enterprises, Inc., David Mays, and Raymond Scott p/k/a Ray Benzino.

## OPINION AND ORDER

LYNCH, District Judge.

Plaintiff Shady Records, Inc. ("Shady" or "plaintiff") brought this action for copyright infringement against defendant Source Enterprises, Inc., publisher of a magazine called The Source, and two of its principals, David Mays and Raymond Scott (collectively, "Source" or "defendants"), charging that Source violated Shady's copyrights in certain songs by publishing virtually the entirety of the songs on its website. At Shady's request, and with Source's consent, the Court entered a modified temporary restraining order ("TRO"), which has been in effect since December 23, 2003. The case has been, to say the least, vigorously litigated by both sides, including discovery disputes, contempt motions, motions for summary judgment by various parties, and disputes over whether the case should be tried to the court or to a jury. The underlying facts, and the resolution of some of these issues, can be found in three published opinions by this Court, and will not be repeated here. *See Shady Records, Inc. v. Source Enterprises, Inc.*, No. 03 Civ. 9944, 2005 WL 14920 (S.D.N.Y. Jan.3, 2005) (granting partial summary judgment against Source and dismissing all claims against defendant Black Enterprise/Greenwich Street Growth Management LLC); *Shady Records, Inc. v. Source Enterprises, Inc.*, 351 F.Supp.2d 64 (S.D.N.Y. June 8, 2004) (finding certain defendants in contempt); *Shady Records, Inc. v. Source Enterprises, Inc.*, 351 F.Supp.2d 74 (S.D.N.Y. June 8, 2004) (dismissing certain counterclaims asserted by Source against Marshall Mathers III).

With all these preliminaries resolved, the case is scheduled for trial on April 4, 2005, on the sole issue remaining, whether Source's use of the copyrighted material constituted fair use. On March 16, 2005, however, plaintiff moved by order to show cause to dismiss its remaining claims against Source. Initially, the motion sought to have the case dismissed without prejudice; during proceedings on the record in open court on that date, however, the Court made clear that the motion would not be granted in that form, and Shady modified its request, agreeing to seek dismissal of its claim with prejudice. On March 21, 2005, Source responded, opposing plaintiff's motion and in the alternative seeking that various conditions be imposed. Shady's motion will be granted as modified; the action will be dismissed with prejudice, and the modified TRO will accordingly be dissolved. Source's request that additional conditions be imposed on Shady as a condition to granting its motion will be denied.

## DISCUSSION

Absent a stipulation joined by all parties, Fed.R.Civ.P. 41(a)(1)(ii), a federal

action may be voluntary dismissed by plaintiff after an answer has been filed only "upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). "Unless otherwise specified in the order, [such] a dismissal ... is without prejudice," *id.*, but permission to dismiss an action under this rule "may be conditioned upon the plaintiff fulfilling whatever terms and conditions the district court, in its discretion, deems necessary to offset the possible prejudice that the defendant may otherwise suffer from the plaintiff dismissing his complaint without prejudice," *Woodzicka v. Artifex Ltd.*, 25 F.Supp.2d 930, 934 (E.D.Wis.1998), including a requirement that the dismissal be with prejudice. *See Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2d Cir.1988) (district judge may convert voluntary dismissal without prejudice to one with prejudice, provided plaintiff is given a subsequent opportunity to withdraw motion).

█ Here, plaintiff now concedes that its remaining claims should be dismissed with prejudice. The case has been pending for well over a year, discovery has been completed, summary judgment motions by all parties adjudicated, pretrial submissions made, and the case is ready for trial in less than two weeks. To permit the plaintiff to discontinue the case at this late stage, and then to reinstate the same action whenever it felt like it in the future, would authorize intolerable manipulation of the Court's calendar and the defendants' resources. The Court has thus directed, and plaintiff has agreed, that the voluntary dismissal will only be permitted if the dismissal is with prejudice. Such a dismissal will have full res judicata effect. *Nemaizer v. Baker*, 793 F.2d 58, 60–61 (2d Cir. 1986).

It also follows, as it would from any dismissal, with or without prejudice, that the modified TRO will be dissolved. As a provisional remedy, a TRO is intended to grant relief pending the resolution of a litigation. Once the litigation is ended, such provisional relief is by definition no longer necessary. If the plaintiff prevails, it may be replaced by a permanent injunction. If the defendant prevails, the claims are dismissed along with any provisional remedies that may have been granted to the plaintiff. Since the dismissal with prejudice amounts to a termination of the case in favor of defendants, it follows that the modified TRO will be vacated. The Court does not understand plaintiff to contend otherwise.

Defendants, however, urge the Court to attach additional conditions to the dismissal. None of these conditions are, in the Court's considered discretion, appropriate. First, defendants urge the Court to "memorialize a finding of fair use" in order to establish for future courts "that certain matters were actually decided." (D.Opp.Mem.5.) But defendants are mistaken. The Court has not made "a finding of fair use," and it has not been "actually decided" by anyone that defendants' use of the materials was fair. Rather, the plaintiff's claim that the use of the copyrighted materials by Source that was challenged in Shady's complaint violated its copyright is being dismissed with prejudice. Accordingly, Shady may never again bring an action against Source based on the actions challenged in this complaint. No ruling is being made by the Court as to the potential merits of Shady's claims had they been litigated; whether its claims had merit is now moot in light of Shady's willingness to abandon those claims totally and forever.

Source asserts that the material in question continues to be newsworthy, and that a determination of fair use would affect its ability to disseminate information about that subject. (D.Opp.Mem.3–4.) Indeed,

defendants go so far as to request that the Court hold that "to the extent that [Source] intend to use portions of works again in [the] future, such use would also constitute fair use." (*Id.* 6 n. 2.) But Source misconceives the consequences of a successful result in this case. Neither this dismissal, nor a jury's verdict with respect to whether Source's actions in late 2003 constituted fair use, could constitute an adjudication concerning any hypothetical actions of Source in the future.

■ Determinations of fair use are highly fact-intensive decisions. A determination that Source had made fair use of Shady's material in 2003 would be based on the specific actions taken by Source at that time, in the specific context of that period. What was newsworthy then may or may not be newsworthy now; what did not exceed the bounds of fair use when the issue was new might no longer be within limits now that the context has changed. Alternatively, new events may give greater prominence to matters that had faded from view, or might warrant more extensive scrutiny of material that once appeared of transient or minor interest. Thus, whether Source won or lost at trial would not affect the merits of a new lawsuit brought by Shady based on future actions of Source that cannot now be anticipated. It would, indeed, be highly inappropriate for this Court, whether now or after a jury verdict in defendants' favor, to issue an advisory opinion about any particular hypothetical use of the material in the future, let alone about *all* potential "use [of] portions of the works again in [the] future." The dismissal with prejudice at plaintiff's request, like a jury verdict in defendants' favor, establishes that the present chapter is closed, and that Shady is not entitled to any relief based on Source's past actions that have been the subject of this case, and may never again bring an action against Source based on those actions. That is the totality of the adjudication that defendants are entitled to, and that is what they will receive by the granting of plaintiff's motion.

■ Second, Source seeks to have the Court vacate its contempt order. Here, too, defendants misconceive the law. A party must comply with a court order, even one later determined to be unconstitutional. *Walker v. City of Birmingham*, 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967). In this case, Source consented to the entry of the modified TRO, then violated the order, as a result of compliance efforts that after a full hearing the Court characterized as "slipshod and ineffectual," and which "rendered it highly unlikely that [those] effort[s] would succeed." *Shady Records*, 351 F.Supp.2d at 72.

Source relies on cases vacating civil contempt orders where a preliminary injunction has been vacated as erroneous. *See, e.g., Buffalo Courier–Express, Inc. v. Buffalo Evening News, Inc.*, 601 F.2d 48, 60 (2d Cir.1979). These cases, however, are inapposite. In the cases cited by defendants, the injunction violated by the contemnor has been vacated as erroneous. Here, there has been no showing that this Court's modified TRO was entered in error. Nor could there be. Throughout the lengthy contempt proceedings, Source never once contended that the order that it violated was erroneously entered. It could not do so, for the simple reason that defendants themselves had consented to entry of the modified TRO, and have never sought to have the order vacated or withdrawn, either before it violated the order or thereafter.

Nor does termination of the case in defendants' favor lead to the conclusion that the order was erroneously entered. Even if Source had contested the entry of the

order—which it did not—the order would have been properly entered on the Court's findings that plaintiff made a substantial, or clear, showing of likelihood of success on the merits, and that plaintiff would be irreparably injured if preliminary relief were not awarded. *See, e.g., Tom Doherty Assocs. v. Saban Entm't Inc.,* 60 F.3d 27, 33–34 (2d Cir.1995) (setting out heightened standard where preliminary injunction sought is mandatory, *i.e.,* alters the status quo). That the defendant ultimately prevailed in the litigation does not mean that the Court erred in deciding that as of the time of the original application, the standard had been met. None of the cases cited by defendants address a situation in which a TRO or preliminary injunction was properly entered and extended *on consent of the defendant,* violated by the defendant in a manner determined to constitute contempt, and not vacated until the defendant ultimately prevailed on the merits of the underlying litigation. Under such circumstances, the ultimate victory of the defendants on the merits of the case does not excuse the defendants' violation of a properly-entered order of the Court—indeed, an order that defendants themselves agreed to.

■ Moreover, contrary to defendants' argument, courts have distinguished not only between criminal and civil contempt sanctions, but between civil contempt sanctions that are compensatory in nature and those that are coercive. Thus, while the termination of a case moots a *coercive* contempt sanction, because the purpose for which the contempt order was entered is no longer in effect, an appeal from a *compensatory* contempt sanction is not mooted by the end of the case, because the purpose of the award—"to compensate [the contempt movant] for the costs it incurred in attempting to [enforce the Court's order]"—is not terminated by the end of the case. *Petroleos Mexicanos v. Crawford Enter., Inc.,* 826 F.2d 392, 400 (5th Cir.1987). Indeed, in a case exactly on point with this one, a distinguished panel of the Second Circuit dismissed the very argument made by Source in a summary order. In *Jaeger v. Massis,* No. 00–7390, 2000 WL 1678778 (2d Cir. Nov.3, 2000), as in this case, the defendant-appellant argued that the district court's ultimate dismissal of plaintiff's action required that court to purge a finding of contempt against him for violating a TRO that was necessarily dissolved with the favorable termination of the underlying lawsuit. Relying on the distinction between coercive and compensatory civil contempt findings, the Court of Appeals decisively rejected the argument, ruling:

> Insofar as a civil contempt sanction is meant to compensate a complainant, it cannot be mooted by voluntary cessation of the suit. *Backo v. Local 281, United Bhd. of Carpenters & Joiners of Am.,* 438 F.2d 176, 182 (2d Cir.1970). The harm flowing from contumacy is not terminated merely because the underlying order is terminated; because the harm persists, so too do the sanctions.

*Id.* at \*\*2. While the Court recognizes that, as a summary order, the Second Circuit's decision is not binding precedent, the Court finds the reasoning of the Court of Appeals in *Jaeger* entirely persuasive.[1]

1. As the Court has frequently had occasion to remark, a district court must seek enlightenment as to the law where it finds it. If it is permissible to cite and to treat as persuasive authority the writings of law students in student-edited journals, the considered opinion of a panel of appellate judges including Chief Judge Walker and Judges Oakes and Leval, uttered not in academic speculation but in entering judgment resolving a litigation by affirming a judgment for over $50,000, must

Since this Court's contempt award was explicitly intended to compensate plaintiff for the costs incurred in enforcing the modified TRO in light of defendants' reckless violation of the order, that award survives the dismissal with prejudice of plaintiff's underlying claims.

■ Third, Source seeks to recover its costs and attorneys' fees. As the Second Circuit has held, "when a lawsuit is voluntarily dismissed with prejudice under Fed. R.Civ.P. 41(a)(2), attorneys' fees have almost never been awarded." *Colombrito v. Kelly,* 764 F.2d 122, 133–34 (2d Cir.1985). *See also Smoot v. Fox,* 353 F.2d 830, 832–33 (6th Cir.1965) (award of attorneys' fees improper in case of voluntary dismissal with prejudice). The logic of this position is clear. Defendants are generally not entitled to an award of attorneys' fees when they prevail at trial; early termination by voluntary dismissal does not impose extra costs on defendants, but rather saves fees by avoiding the necessity of a trial.

■ Of course, under the Copyright Act, attorneys' fees are available to a prevailing party. In this case, therefore, the Court has discretion to award attorneys' fees, as well as costs, to the prevailing party. 17 U.S.C. § 505. However, the decision to award fees and costs is discretionary. *Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 533–34, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). Among the factors to be considered in making this decision are "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 156 (3d Cir.1986), cited with

surely be considered a valuable source of wis-

approval in *Fogerty,* 510 U.S. at 534 n. 19, 114 S.Ct. 1023.

In this case, it would be entirely inequitable for either party to be awarded costs, let alone attorneys' fees. As the Court has repeatedly noted, this case has been litigated on both sides in a manner that greatly escalated the number of issues to be resolved and the expenses of both parties. To take only Source's actions (and without minimizing similar conduct on the part of Shady), Source asserted completely meritless counterclaims against both Shady and Mathers, vastly expanding the scope of discovery and delaying adjudication of the case. Moreover, Source failed to comply with the modified TRO to which it had itself consented, resulting in extensive contempt proceedings, and in the course of those proceedings engaged in "reckless assertion of litigation positions, ultimately abandoned, which required Shady to investigate vigorously the possibility that it was confronted with willful contempt, and to develop expert testimony to refute a defense theory that was finally abandoned only at the very last minute in the face of inconsistent testimony from Source's own CEO," *Shady Records,* 351 F.Supp.2d at 73. Finally, although Shady's action ultimately proved unsuccessful, it has prevailed on numerous issues, in many of which Source's positions verged on the frivolous.

In light of the litigation excesses of both sides, the Court has resisted the repeated cries of both parties for sanctions. The most equitable result, in light of the totality of the circumstances, is for each side to bear its own costs.

## CONCLUSION

For the above reasons, the Court grants plaintiff's motion to dismiss its remaining

dom.

claims with prejudice. The modified TRO entered on consent on December 23, 2003, is vacated. Defendants' application to attach additional conditions to the dismissal is denied.

SO ORDERED: