895 A.2d 1234 (2006)
385 N.J. Super. 91
Walter SHULAS, Plaintiff-Respondent,
v.
Joseph ESTABROOK and Patricia Estabrook, Defendants-Appellants,
v.
B.B.J., Inc., Third-Party Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted April 3, 2006.
Decided April 27, 2006.
*1235 Leary, Bride, Tinker & Moran, Cedar Knolls, attorneys for appellants (Walter E. Monaghan, on the brief).
Harold J. Gerr, Highland Park, attorney for respondent.
Before Judges FALL, C.S. FISHER and MINIMAN.
The opinion of the court was delivered by
FISHER, J.A.D.
In this matter, we consider whether the trial judge erred in granting a voluntary dismissal of this action and in permitting plaintiff to pursue an identical, newly-filed action when plaintiff's purpose in seeking a voluntary dismissal was to eviscerate the discovery end date, moot defendant's motion for summary judgment and extinguish an imminent trial date. Because the order failed to meet the requirements of R. 4:37-1(b) and hindered the fair and efficient administration of justice, we reverse.

I
The early history of this case was uneventful. On February 13, 2004, plaintiff Walter Shulas (plaintiff) filed a complaint alleging he suffered personal injuries when, on November 29, 2002, he was performing renovation work on a deck at the home of defendants Joseph and Patricia Estabrook (defendants). Defendants filed an answer on March 26, 2004; their answer included a third-party complaint seeking contribution and indemnification from B.B.J., Inc., plaintiff's employer. The complaint was later amended to allege that the incident occurred on June 6, 2003, and not on November 29, 2002 as asserted in the original complaint.
On April 18, 2005, the judge entered an order which extended the previously established discovery end date to May 19, 2005. This order also adjourned the arbitration then scheduled for May 12, 2005 to June 2, 2005. The matter was arbitrated on June 2, 2005; defendants filed a demand for a trial de novo on June 21, 2005. B.B.J.'s motion for summary judgment was granted on June 24, 2005, and a trial date of August 22, 2005 was assigned, but later adjourned to September 26, 2005.
Defendants moved for summary judgment, arguing that B.B.J. was responsible for plaintiff's injuries and also that plaintiff's claim could not be sustained without an expert's testimony. The motion's *1236 return date of August 5, 2005 was adjourned to September 9, 2005 at plaintiff's request.
Without leave of court, on August 5, 2005, plaintiff served for the first time a liability expert report. Defendants predictably and promptly objected. On Tuesday, September 6, 2005  three days before the adjourned return date of defendants' motion for summary judgment  plaintiff telecopied to the court and defense counsel his attorney's certification as well as a motion for a voluntary dismissal, which purported to be returnable September 9, 2005. These papers were untimely because R. 4:46-1 requires that papers in response to motions for summary judgment, including cross-motions, must be filed and served not later than ten days before the return date of the motion for summary judgment.[1] In his certification, plaintiff's attorney advised for the first time that, on May 27, 2005, he had filed another complaint "with a new, more recent docket number," and that he wished to dismiss the complaint filed in this action and proceed on the new complaint.[2]
Although he argued that his claim did not require expert evidence, plaintiff asserted that he had attempted to communicate with defense counsel in the preceding weeks to deal with what he referred to as "the logistical issue" concerning his submission of the expert report beyond the discovery end date. After referring to this problem, and the fact that plaintiff was apparently "still treating and had surgery on May 5, 2005," plaintiff's counsel represented his purpose for moving for a voluntary dismissal in the following way:
A new complaint was filed in a timely manner. I am asking the [c]ourt to allow the voluntary dismissal of the old complaint. I would prefer it if we could use the discovery in the old lawsuit and perhaps agree on something shorter than the usual discovery period for the new lawsuit.
If this motion is granted, it is unnecessary for the [c]ourt to consider the issues raised by defendant's pending motion for summary judgment.
Defense counsel telephoned the judge's chambers on Thursday, September 8, to inquire whether oral argument would be heard the next day. The judge's law clerk advised that defendants' summary judgment motion had been rendered moot by plaintiff's voluntary dismissal motion. When defense counsel understandably questioned this, the law clerk stated, according to defense counsel, "that the [j]udge could not force plaintiff's attorney to prosecute his claim."
On September 9, 2005, without hearing oral argument and without explanation, the judge entered an order granting plaintiff's motion. Soon thereafter, defense counsel wrote to the judge and inquired "whether opinions or findings were placed on the record outside of counsel's presence and, further, whether the [c]ourt will be filing a statement or opinion pursuant to R. 2:5-1(b)."[3] In response, the judge *1237 wrote to counsel on September 30, 2005, stating:
Your motion [for summary judgment] was rendered moot by the voluntary dismissal of the matter by the plaintiff.
The [c]ourts do not render opinions on matters not before them.
Thank you for your kind attention and cooperation.
We granted defendants' motion for leave to appeal the September 9, 2005 order,[4] and now reverse.

II
Our examination into the soundness of the order in question is hampered by the trial judge's failure to adequately explain, as required by R. 1:7-4(a), why he permitted a voluntary dismissal and why he granted the motion without imposing terms.[5]
The Supreme Court has said that a judge's failure to comply with R. 1:7-4(a) "constitutes a disservice to the litigants, the attorneys and the appellate court." Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980). See also In re Farnkopf, 363 N.J.Super. 382, 390, 833 A.2d 89 (App.Div.2003); Salch v. Salch, 240 N.J.Super. 441, 443, 573 A.2d 520 (App. Div.1990). Here, the judge provided no reasons for granting plaintiff's motion for a voluntary dismissal; instead, only after defendants' inquiry did the judge state, without explanation, that defendants' motion for summary judgment was rendered moot by the voluntary dismissal. This was followed by the judge's conclusion that "[c]ourts do not render opinions on matters not before them."
Notwithstanding the failure to comply with R. 1:7-4(a), we discern from his letter of September 30, 2005 that the judge mistakenly believed plaintiff was entitled to unilaterally dismiss his complaint at this stage of the litigation without consequence.

III
The voluntary dismissal of a complaint without prejudice is governed by R. 4:37-1. Subsection (a) of that rule allows a plaintiff to obtain a dismissal without court approval "by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs." R. 4:37-1(a). Here, by the time plaintiff sought a voluntary dismissal, defendants had answered the complaint and moved for summary judgment; in fact, trial was scheduled to occur only seventeen days later.[6] Thus, subsection (a) was inapplicable here.
As a result, plaintiff's motion for a voluntary dismissal was governed by subsection (b), which states in pertinent part that in these circumstances "an action shall be dismissed at the plaintiff's instance only by leave of court and upon such terms and conditions as the court deems appropriate." R. 4:37-1(b). Whether to dismiss with or without prejudice, whether to impose terms, and the *1238 crafting of terms that are fair and just in the circumstances, are all matters that lie within the court's sound discretion. See Mack Auto Imports, Inc. v. Jaguar Cars, Inc., 244 N.J.Super. 254, 258, 581 A.2d 1372 (App.Div.1990). In exercising that discretion, the court is chiefly required to protect "the rights of the defendant." Burke v. Central R. Co., 42 N.J.Super. 387, 398, 126 A.2d 903 (App.Div.1956). As explained by Judge Matthews, Fed.R.Civ.P. 41(a)(2)  upon which R. 4:37-1(b) was patterned  was adopted to protect defendants from the duplication of litigation costs:
The evil aimed at by the rule "is present in any instance in which a defendant is damaged by being dragged into court and put to expense with no chance whatever (if there is a dismissal without prejudice) of having the suit determined in his favor." McCann v. Bentley Stores Corporation, 34 F.Supp. 234 (W.D.Mo. 1940). The obvious purport of our rule is to protect a litigant where a termination of the proceedings without prejudice will place him in the probable position of having to defend, at additional expense, another action based upon similar charges at another time.
[Union Carbide Corp. v. Litton Precision Products, Inc., 94 N.J.Super. 315, 317, 228 A.2d 99 (Ch.Div.1967).]
Here, the purpose of plaintiff's motion for a voluntary dismissal is readily apparent and was clearly inconsistent with the intent of R. 4:37-1(b), as described in Union Carbide.
Plaintiff's obvious intent was to avoid the consequences of the discovery end date, defendant's summary judgment motion, and the impending trial date, and to relitigate their disputes in a new action. As previously noted, plaintiff filed a complaint on May 27, 2005  only eight days after the discovery end date. That he had no intention of immediately pursuing that new complaint was demonstrated by the fact that he did not timely issue a summons, as required by R. 4:4-1, nor did he promptly serve defendant with the new complaint. Plaintiff merely filed this other complaint and held it as insurance should the discovery end date later present difficulties for him.
When faced with defendants' motion for summary judgment, based in part on plaintiff's lack of a liability expert report, and when faced with an imminent trial date at which he would not be permitted, absent court order, to offer expert testimony, plaintiff called down his deus ex machina[7]  his device for undoing what had already been done. Although he had been secretive about his new complaint, plaintiff was candid about his reasons for seeking a voluntary dismissal, referring to his "logistical issue": i.e., the passed discovery end date and his lack of an expert report. There is no doubt that he sought dismissal of this action without prejudice so he could proceed on his new complaint without the encumbrances of the discovery end date, defendants' motion for summary judgment, and the impending trial date.
A motion based on R. 4:37-1(b) involves three sequential inquiries: (a) whether the matter should be dismissed without prejudice, (b) if so, whether terms should be imposed, and (c) if so, what terms will alleviate any prejudice to the defendant and prevent injury to the efficient administration of justice generated by the ensuing delay and duplication of effort. As we have said, the resolution of these questions rests within the sound *1239 discretion of the trial judge. Mack Auto, supra, 244 N.J.Super. at 258, 581 A.2d 1372.
At times, when examining a trial court's exercise of discretion, we have looked beneath the surface of the order in question to inquire whether the plaintiff was inappropriately placed in the position of having to seek a dismissal pursuant to R. 4:37-1(b). In Fehnel v. Fehnel, 186 N.J.Super. 209, 452 A.2d 209 (App.Div.1982), for example, plaintiff's motion for a voluntary dismissal of her divorce action was granted on the condition she pay defendant $2,000 in counsel fees; the order further barred the filing of a new divorce action until the fee was paid. In examining the proceedings leading up to that order, we determined that plaintiff was placed in the untenable position of proceeding to trial on a custody dispute for which she was justifiably unprepared. We reversed, holding that the term imposed for the institution of a new divorce action was inequitable when, in the circumstances, the trial judge should have simply adjourned the trial for a brief period of time. Id. at 212-13, 452 A.2d 209.
We viewed the contours of R. 4:37-1(b) from a different angle in Mack Auto, supra, 244 N.J.Super. 254, 581 A.2d 1372, where plaintiff appealed a voluntary dismissal with prejudice. As we there observed, at some point in the litigation, the plaintiff became "dissatisfied with the information obtained in discovery," and moved for, among other things, a voluntary dismissal without prejudice. Id. at 256, 581 A.2d 1372. At the same time, plaintiff commenced a similar action in federal court, which reiterated the claims asserted against defendant in state court and included other federal claims as well. The trial judge denied the motion for a voluntary dismissal but granted plaintiff's request to amend its complaint. Thereafter, plaintiff continued to view the discovery permitted as "inadequate," and in an attempt to establish the finality required to appeal the earlier discovery orders, since we had denied leave to appeal, "plaintiff advised the court that it voluntarily accepted dismissal of the action with prejudice." Id. at 257, 581 A.2d 1372. We concluded that plaintiff's attempts to seek our review of the discovery orders by creating finality through a voluntary dismissal were inappropriate. Ibid. However, we held that the earlier denial of plaintiff's motion for a voluntary dismissal without prejudice stood "on a different footing," id. at 258, 581 A.2d 1372, and concluded:
Under R. 4:37-1(b), plaintiff may voluntarily dismiss an action after a defendant has filed a responsive pleading "only by leave of court and upon such terms and conditions as the court deems appropriate." Whether such a dismissal is with prejudice or without prejudice is one of the terms a court may impose in the exercise of its sound discretion. Though a voluntary dismissal terminates the action and may not be appealable so as to reinstate what has been voluntarily terminated, the terms of the dismissal order are appealable.
[Id. at 258, 581 A.2d 1372 (citations omitted).]
In reviewing the terms of the dismissal order, we observed that dismissal without prejudice should have been ordered because a dismissal with prejudice would have an undue and, perhaps, preclusive impact on the pending federal action. In addition, we held that the trial judge should have imposed "on plaintiff all the counsel fees incurred by defendant in this action," and that "[n]ot to have done so constituted a mistaken exercise of discretion," id. at 259, 581 A.2d 1372, because defendant had "incurred counsel fees defending this action [that it] will have to *1240 duplicate . . . in the federal action," id. at 260, 581 A.2d 1372.
Our review of a voluntary dismissal order should not just encompass an examination of the surrounding circumstances, as in Mack Auto and Fehnel. The experience of federal courts in considering similar applications based on Fed.R.Civ.P. 41(a)(2) demonstrates that the plaintiff's motive as well as the impact of a dismissal without prejudice on the efficient administration of justice must be carefully scrutinized.
For example, in Shady Records, Inc. v. Source Enterprises, Inc., 371 F.Supp.2d 394, 397 (S.D.N.Y.2005), the district judge held that a voluntary dismissal without prejudice should not have been ordered when the litigation had reached an advanced stage:
The case has been pending for well over a year, discovery has been completed, summary judgment motions by all parties adjudicated, pretrial submissions made, and the case is ready for trial in less than two weeks. To permit the plaintiff to discontinue the case at this late stage, and then to reinstate the same action whenever it felt like it in the future, would authorize intolerable manipulation of the Court's calendar and the defendants' resources.
In re Urohealth Systems, Inc., 252 F.3d 504, 508 (1st Cir.2001) presents a similar example. There, the Court of Appeals for the First Circuit determined that "a plaintiff cannot conduct a serious product liability claim in a federal court, provoke over a year's worth of discovery and motion practice, allow the case to reach the stage at which the defendant filed a full-scale summary judgment motion, and then when matters seemed to be going badly for plaintiff simply dismiss its case and begin all over again in a state court in what is essentially an identical proceeding." Id. at 508. See also Fremaint v. Ford Motor Co., 258 F.Supp.2d 24, 33 (D.P.R.2003); 103 Investors I, L.P. v. Square D Co., 222 F.Supp.2d 1263, 1271-72 (D.Kan.2002), aff'd in part, rev'd in part on other grounds, 372 F.3d 1213 (10th Cir.2004). In Jorgensen v. Prudential Ins. Co. of Amer., 852 F.Supp. 255, 260 (D.N.J.1994) it was held that a plaintiff's improper motive warranted the striking of a notice of dismissal without prejudice, pursuant to Fed.R.Civ.P. 41(a)(1). There, Judge Debevoise stated:
plaintiff filed a similar case in state court the same day he filed his voluntary dismissal. Plaintiff must have known that defendant would remove his new action to the federal court and perhaps hoped that a judge other than myself would be assigned to the case. Thus the dismissal was filed for an improper purpose  another reason to strike it.
[Jorgensen, supra, 852 F.Supp. at 260.]
We find persuasive the manner in which the federal courts have interpreted Fed. R.Civ.P. 41(a) and, because our R. 4:37-1 is nearly identical, we conclude that these federal decisions should be followed. See Baumann v. Marinaro, 95 N.J. 380, 390, 471 A.2d 395 (1984); Quick Chek Food Stores v. Springfield Tp., 83 N.J. 438, 446, 416 A.2d 840 (1980); Hodgson v. Applegate, 31 N.J. 29, 35, 155 A.2d 97 (1959).
Our prior experiences with R. 4:37-1(b) in Mack Auto and Fehnel, as well as the guidance provided by the experiences of the federal courts in similar circumstances, instruct that an examination into the propriety of a voluntary dismissal without prejudice requires an investigation into the reasons why the order was sought as well as the actions or inactions of the parties that preceded its entry. Our review of the order in question is further illuminated by the rule changes that resulted from the project known as "Best Practices." Indeed, the presence of these rule changes is of critical importance because it undoubtedly *1241 was out of a concern for the effect of the discovery end date, which the "Best Practices" rule changes have given far greater rigidity than before, that led plaintiff to pursue his present course.
As we have indicated, at the time plaintiff faced defendants' motion for summary judgment, and moved for a voluntary dismissal in response, the discovery end date had passed. At that point, absent court order, plaintiff was prohibited from offering his late expert report in opposition to defendants' motion for summary judgment and from offering expert testimony at the time of trial. Instead of confronting this difficulty directly  by seeking an extension of discovery pursuant to R. 4:24-1(c)  plaintiff opted for a solution that, when granted, severely prejudiced defendants by guaranteeing the unnecessary duplication of past efforts.
The permission given to plaintiff to pursue a new, identical complaint without consequence also served to minimalize the central purpose of our court rules: the fair and efficient administration of justice. See Ragusa v. Lau, 119 N.J. 276, 283, 575 A.2d 8 (1990); Handelman v. Handelman, 17 N.J. 1, 10, 109 A.2d 797 (1954). Were we to endorse the order in question, we would legitimize a gaping loophole in the "Best Practices" rule amendments, which were intended to "improve" and not frustrate "efficiency and expedition of the litigation process." Pressler, Current N.J. Court Rules, comment on R. 1:1-2 (2006). The process authorized by R. 4:37-1(b) cannot be the means of avoiding the requirements of R. 4:24-1(c) or the means for creating a less efficient or an uneven method for adjudicating disputes. Our modern procedures could not have evolved to the present day only to prove irrelevant and ineffectual when faced with an artifice such as plaintiff created here.
Plaintiff's claim to relief from his "logistics problem" should have been pursued directly, not disingenuously. Instead of resorting to the charade of a voluntary dismissal coupled with the unveiling of a new complaint waiting in the wings, plaintiff should have first been obligated to seek relief from the discovery end date. Because plaintiff opted not to pursue that proper course, we conclude that the trial judge erred in granting a voluntary dismissal without prejudice, which had the undesirable effect of unraveling all that had been accomplished in this litigation.

IV
In reversing the order of dismissal without prejudice, and in mandating the denial of that motion on remand, we return this action to where it was when defendants' motion for summary judgment was still pending. In light of what we have said, plaintiff should be given an opportunity to move for an extension of discovery pursuant to R. 4:24-1(c). Defendants' motion for summary judgment should be held in abeyance pending resolution of the motion for an extension of discovery. Should the motion for an extension of discovery be granted,[8] the impetus for plaintiff's pursuit *1242 of a voluntary dismissal without prejudice will have evaporated.
Should the motion for an extension of discovery be denied, plaintiff may again seek a voluntary dismissal. If the motion for a voluntary dismissal is renewed, the trial judge should first determine whether there is a legitimate basis for granting that relief  and the skirting of a denial of a discovery extension is not a legitimate basis. The trial judge should also insure that the granting of a dismissal without prejudice does not unduly prejudice the efficient administration of justice.
If there is a legitimate basis for granting a voluntary dismissal without prejudice, the trial judge should impose such terms as are appropriate. Those terms should at least encompass plaintiff's payment of the counsel fees incurred by defendants for services that will be duplicated should plaintiff be permitted to pursue the new complaint. In so holding, we do not mean to suggest that no other terms would be appropriate if the action takes this alternative course; a proper exercise of discretion requires that the judge balance the interests of the parties, but the judge must take particular care to protect defendants from the cost or other prejudice resulting from the duplication of their previously expended efforts.
We lastly remind the judge of his obligation to thoroughly describe on the record the reasons for his disposition of any of the matters that will hereafter come before him in this action as mandated by R. 1:7-4(a).
Reversed.
NOTES
[1] Assuming we should not view plaintiff's motion as a cross-motion, then it should have been filed and served not later than sixteen days before the specified return date. R. 1:6-3(a). Whether governed by R. 4:46-1 or R. 1:6-3(a), plaintiff's papers were untimely. And, although a party may seek permission to file a motion on short notice, there is no indication in the record on appeal that plaintiff sought relief from these time requirements. Plaintiff merely forwarded the tardy motion to the court and counsel without seeking prior approval and without an explanation for his delay.
[2] The new complaint was never served on defendants  even informally  until defendant received it as part of the motion for a voluntary dismissal served on September 6, 2005.
[3] R. 2:5-1(b) permits a trial judge to amplify an earlier decision within fifteen days of service of a notice of appeal.
[4] Because the voluntary dismissal order disposed of all remaining issues, it was a final order. Defendants did not require our leave to file an appeal.
[5] We are further troubled by the fact that the judge permitted the filing of plaintiff's motion for a voluntary dismissal on short notice without ascertaining whether defendants had any valid objection, without permitting defendants to respond to the tardy motion, and without entertaining oral argument. See, e.g., Filippone v. Lee, 304 N.J.Super. 301, 306, 700 A.2d 384 (App.Div.1997).
[6] Subsection (a) also permits an action to be voluntarily dismissed without court approval through the "filing [of] a stipulation of dismissal specifying the claim or claims being dismissed, signed by all parties who have appeared in the action." No such stipulation was filed here.
[7] This Latin phrase (translated as "god from the machine") refers to a common construct in ancient Roman and Greek theater when, toward the end of the play, a god-like character was lowered onto the stage by a crane, or machine, in order to untangle a convoluted plot or resolve a protagonist's hopeless dilemma.
[8] We intimate no view as to how any future motion for an extension of discovery should be decided although we do emphasize that plaintiff must be required to demonstrate "exceptional circumstances," since a trial date had been set at the time the erroneous voluntary dismissal was granted. That is, plaintiff should not be entitled to take advantage of our earlier holding that a less onerous standard applies to a motion to extend discovery where there is no scheduled trial date. See Ponden v. Ponden, 374 N.J.Super. 1, 863 A.2d 366 (App.Div.2004), certif. denied, 183 N.J. 212, 871 A.2d 90 (2005). At the time the trial judge mistakenly granted a voluntary dismissal, a trial date was scheduled to occur only seventeen days later. That is the setting in which any future motion for a discovery extension should be examined even though there is now no scheduled trial date.