# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3660-15T2

A.D.J.,

    Plaintiff-Respondent,

v.

A.G.,

    Defendant-Appellant.

_____

       Argued August 14, 2018 — Decided August 27, 2018

       Before Judges Sumners and Gilson.

       On appeal from Superior Court of New Jersey,
       Chancery Division, Family Part, Burlington
       County, Docket No. FV-03-1381-16.

       Mark J. Molz argued the cause for appellant.

       Respondent has not filed a brief.

PER CURIAM

    Defendant A.G. appeals from a March 17, 2016 final restraining order (FRO), entered under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, based on a predicate act of harassment, N.J.S.A. 2C:33-4. We reverse and vacate the FRO because there was insufficient evidence presented at trial to establish an act of harassment or a need for an FRO.

I.

We discern the facts from the record of the one-day trial, which took place on March 17, 2016.[1] At trial, both parties were represented by legal counsel. Four witnesses testified: plaintiff, two of plaintiff's friends, and a friend of defendant.

Plaintiff A.D.J. and defendant were in a dating relationship for several years. While they both were in high school, defendant became pregnant and, in July 2014, she gave birth to their son, Q.J.

For approximately two years after the birth of their son, plaintiff lived with defendant at the home of defendant's parents. In that regard, plaintiff testified that defendant's parents took care of him and his son.

In early February 2016, plaintiff and defendant broke up and plaintiff moved out of defendant's family home. Thereafter, plaintiff moved in to the home of a school friend, A.F. A.F. lived with his father, who owned the home. The parties' son continued to reside with defendant and her family.

The incident that gave rise to the application for the FRO occurred on February 27, 2016. On that day, plaintiff was caring

---

[1] The transcript submitted to us contained an FD docket number, BUR-FD-03-1100-16. The FRO, however, was entered under Docket No. FV-03-1381-16.

for his son and he had his son with him at his friend's home, where plaintiff was living at the time. The child was approximately eighteen months old at that time. Plaintiff testified that there were approximately ten other "young people" at the home on February 27, 2016. Plaintiff also acknowledged that there were no adults at the home on that day.

At some point in the afternoon of February 27, 2016, defendant, together with a friend, V.D., went to the home to check on her son. Plaintiff testified that defendant showed up unexpectedly while he and his son were taking a nap. According to plaintiff, he got up, opened the door of the home, and defendant "shoved her way in." Plaintiff then testified that defendant started yelling, began hitting him, and grabbed him by his hair. In response, plaintiff grabbed defendant by her shirt, swung her back and forth in a narrow hallway, and put her on the floor. Plaintiff admitted he was angry at the time and that he punched a door and fractured his hand.

On cross-examination, plaintiff was shown several photographs of defendant that depicted her with a black eye and various bruises. He acknowledged he recognized defendant and the injuries depicted in the photographs, but was "not sure" if he caused those injuries to defendant. Plaintiff also acknowledged that he was

six foot one inches tall, was bigger than defendant, and that when he put her on the floor, he "might not have done it gently."

Through her counsel, defendant contended that plaintiff had been smoking marijuana on February 27, 2016. Plaintiff denied smoking marijuana on the day of the incident, and he testified that he had stopped smoking marijuana months before February 27, 2016. On cross-examination, however, plaintiff admitted he tested positive for marijuana use on March 9, 2016.

No evidence of a past history of domestic violence was admitted at trial. While plaintiff's counsel attempted to elicit testimony from plaintiff concerning certain alleged prior incidences, defendant's counsel objected, and the court sustained those objections. Moreover, plaintiff never testified about the need for an FRO or his fear that defendant would commit further acts of domestic violence.

Plaintiff also called two witnesses, who were present at the time of the incident on February 27, 2016. Those witnesses corroborated some of plaintiff's testimony, but gave other testimony that varied from plaintiff's account.

Defendant did not testify, but her counsel called V.D. to testify. V.D. told the court that on February 27, 2016, she went with defendant to the home where the child was with plaintiff. V.D. then testified that upon their arrival, the home smelled like

marijuana, and the baby was alone in a dark room, not being watched. According to V.D., defendant questioned plaintiff and they "got nasty with each other." She contended that plaintiff pushed defendant first and defendant pushed plaintiff back. She also testified that defendant never hit plaintiff, but that plaintiff hit defendant. V.D. also testified that defendant was the person who suffered injuries, which included bruises on her face and arms.

At the end of the testimony, the trial court made its findings on the record. The court found that marijuana was used and that "everybody involved in the case" smokes marijuana. In his complaint, plaintiff had alleged two predicate acts: assault and harassment. The court made no express findings concerning the alleged predicate act of assault. Instead, the trial court found that there was a fight, but could not determine who started it.

The trial court did find that defendant harassed plaintiff. That finding was based on the fact that defendant showed up at the home "unexpectedly[, and] having gone there unexpectedly, [defendant] caused the conflict between the two of them." Accordingly, the court found that defendant's actions constituted harassment under N.J.S.A. 2C:33-4(a), by making a communication in "any other manner likely to cause annoyance or alarm." In that regard, the court stated:

> [Defendant's] unexpected entry into that house and beginning to yell, she had the motive to go there to cause a scene.
>
> So accordingly, I find her guilty of harassment, a manifestation of her . . . disposition on this day caused alarm and caused the whole series of events that happened.

In making its ruling, the court never expressly made any credibility findings. The court also never addressed the need for an FRO. In that regard, there was no finding of a prior history of domestic violence by defendant against plaintiff. Nor was there any finding of a need for an FRO to protect plaintiff or to prevent further acts of domestic violence.

After the entry of the FRO, the court also entered an order allowing plaintiff to have temporary supervised parenting time with his son. That separate order was entered under an existing FD docket number. Thereafter, on March 23, 2016, the parties returned to court for a further hearing concerning plaintiff's parenting time, and again that hearing took place under the FD docket. That same day, another order granting plaintiff parenting time was entered.

6

Defendant now appeals from the FRO entered on March 17, 2016.[2] She argues that the trial court erred by (1) not making any credibility findings; (2) considering facts not in evidence; and (3) failing to make findings supporting a violation of the PDVA. Defendant also contends that the facts here were, at best, contretemps and a restraining order here would "trivialize" the PDVA. Plaintiff did not file any opposition to this appeal.

We are constrained to reverse and vacate the FRO. There was no finding of an assault. The trial court failed to make sufficient findings to support a predicate act of harassment. Moreover, there was no evidence of a need for a FRO.

Our scope of review is limited when considering an FRO issued by the Family Part following a bench trial. A trial court's findings are binding on appeal "when supported by adequate, substantial, and credible evidence." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 552 (2014). This deference is particularly appropriate where the evidence at trial is largely testimonial and hinges upon a court's ability to assess

---

[2] In her notice of appeal, defendant identified the FRO, as well as the two parenting time orders that were entered on March 17, 2016 and March 23, 2016. In a subsequent letter, counsel for defendant clarified that defendant was only appealing from the FRO.

credibility.  Gnall v. Gnall, 222 N.J. 414, 428 (2015).  We also keep in mind the expertise of trial court judges who routinely hear domestic violence cases in the Family Part.  R.G., 217 N.J. at 553.  Consequently, we will not disturb the "factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice."  S.D. v. M.J.R., 415 N.J. Super. 417, 429 (App. Div. 2010) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)).

Domestic violence occurs when an adult or emancipated minor commits one or more acts upon a person protected under the PDVA. N.J.S.A. 2C:25-19(a).  When determining whether to grant an FRO, a trial judge must engage in a two-step analysis.  Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006).  "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125; see also N.J.S.A. 2C:25-29(a) (providing that an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed").  Second, the court must determine that a restraining order is necessary to provide protection for the victim.  Silver, 387 N.J. Super. at 126-27.  As

part of that second step, the judge must assess "whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 127).

Moreover, a judge is required to make specific findings of fact and state his or her conclusions of law. R. 1:7-4(a); see also Shulas v. Estabrook, 385 N.J. Super. 91, 96 (App. Div. 2006) (requiring an adequate explanation of the basis for a court's action). "Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'" Gnall, 222 N.J. at 428 (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)). Thus, although our standard of review is generally limited, where inadequate factual findings are made or where issues are not addressed, we are constrained to vacate the FRO and remand for further proceedings. Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015); see also Franklin v. Sloskey, 385 N.J. Super. 534, 544 (App. Div. 2006) (vacating an FRO where the facts in the record did not support a determination of harassment, and there was no history of domestic violence between the parties).

Here, the trial court failed to place adequate findings of fact and conclusions of law on the record. The only predicate act found was harassment under N.J.S.A. 2C:34-4(a). A person commits harassment under subsection (a) "if, with a purpose to harass another," she "[m]akes or causes to be made, a communication . . . at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm[.]" N.J.S.A. 2C:34-4(a). "A finding of purpose to harass may be inferred from the evidence presented." State v. Hoffman, 149 N.J. 564, 577 (1997).

The trial court here did not adequately identify the specific conduct that constituted the predicate act of harassment. See Silver, 387 N.J. Super. at 125. The court reasoned that defendant had shown up unexpectedly, but the court never made an express finding that defendant showed up or argued with plaintiff with the purpose to harass him. Indeed, the trial court expressly found that it could not determine who initiated the fight between the parties and found that "both [parties] engaged in fighting."

Second, there was no evidence offered as to why an FRO was necessary. See id. at 126-27. In that regard, plaintiff adduced no testimony or evidence concerning prior domestic violence by defendant, a fear of future domestic violence or abuse by defendant, or any other evidence that would support a finding of

the necessity for an FRO. Moreover, the trial court did not address the need for an FRO, nor did it evaluate any of the factors set forth in N.J.S.A. 2C:25-29(a)(1) to (6). See J.D., 207 N.J. at 475-76.

Accordingly, because the record developed at the trial does not establish the basis for an FRO, we are constrained to vacate the FRO entered in this matter on March 17, 2016. Furthermore, the record here does not warrant a remand, because plaintiff failed to present any evidence of the need for an FRO.

Reversed and the FRO is vacated.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3660-15T2