# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2668-22

B.J.C.,

    Plaintiff-Appellant,

v.

K.H.,

    Defendant-Respondent.

_____

Argued March 11, 2024 – Decided July 31, 2024

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-1469-23.

Susan McCue argued the cause for appellant (Central Jersey Legal Services Inc., attorneys; Susan McCue, on the briefs).

Steven Goldstein argued the cause for respondent (Goldstein & Handwerker, LLP, attorneys; Steven Goldstein, on the brief).

PER CURIAM

Plaintiff B.J.C.[1] appeals from an order denying her application for a final restraining order (FRO) under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35, and dismissing a temporary restraining order (TRO).  Plaintiff argues the trial court erred in its application of the two-prong test articulated in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), and did not properly analyze the statutory factors in N.J.S.A. 2C:25-29(a)(1) to (6). We conclude the trial court failed to adequately evaluate plaintiff's request for the protection of an FRO, and the denial of the entry of an FRO was inconsistent with the competent evidence in the record.  Therefore, we reverse the order of the trial court and remand for a new trial.

I.

We take the facts from the record developed at the one-day FRO trial. Both parties testified at trial and were represented by attorneys.

The parties were in a relationship and resided together with their son and defendant's aunts.  In March 2023, the parties' then-four-year-old son told plaintiff that defendant had hit him while they were working on his homework. Plaintiff told their son to go upstairs, and a "heated" argument ensued with

---

[1] We use initials in the caption and refer to the parties as plaintiff and defendant to protect privacy interests.  R. 1:38-3(d)(9).

A-2668-22

defendant. Plaintiff testified defendant kept waving his hands in her face despite three repeated requests for him to stop. After the third request, plaintiff "smacked" defendant's hand away from her face.

Plaintiff testified defendant thereafter "choked" her with both hands around her neck, "punched" her in the head and face, and "pulled" her hair. According to plaintiff, she could not breathe. An audio recording admitted into evidence supported plaintiff's claim that during the assault, defendant's aunts repeatedly asked defendant to stop. When defendant did not stop, the aunts intervened and pulled him off plaintiff. Plaintiff testified that she sustained bruises on her neck, left arm, legs, and behind her shoulder, and that testimony was supported by photographs admitted into evidence.

Plaintiff left the residence with their son and called 9-1-1. Defendant also left the residence and got into his car. He then got out of his car and yelled that he was going to "f[***] up" plaintiff. When the police arrived, both parties gave statements.

Later that day, plaintiff filed for a TRO, alleging harassment. Thereafter, plaintiff amended her TRO to add the allegation of any other crime involving risk of death or serious bodily injury under the PDVA. The amended TRO also made allegations concerning the previous history of domestic violence by

3

defendant, including events in August 2020 and December 2022. Plaintiff filed a second amended TRO that included allegations concerning two additional incidents of domestic violence in December 2020 and February 2021.

At trial, plaintiff testified regarding the prior incidents of domestic violence. In December 2022, defendant locked plaintiff in a room at defendant's aunt's home and would not allow her to leave. According to plaintiff, defendant did not permit her to use the bathroom, repeatedly struck her jaw with his knuckles, pushed her, and put his hands on her throat. Plaintiff testified that defendant also choked her in August 2022, in February 2021, and in December 2020. Plaintiff submitted photographs showing her injuries from the February 2021 incident.

Plaintiff stated that she was in "fear" of "immediate danger" from defendant, and she did not want defendant around her. She was also afraid that he would "put his hands on her" because defendant had "anger issues" and was "furious" that plaintiff had obtained the TRO.

Defendant did not testify; rather, he presented the testimony of his aunt, S.C. S.C. recounted that in August 2020, plaintiff and defendant lived with her and plaintiff told her about the choking incident. S.C. denied witnessing the incident and any "physical" interactions between the parties.

4

S.C. testified that in March 2023, she witnessed the parties engaged in a "face-to-face" argument in the dining room. In part, S.C.'s testimony corroborated plaintiff's testimony that plaintiff asked defendant not to put his hands in her face, and that defendant yelled at plaintiff while outside. S.C., however, denied seeing defendant punch or choke plaintiff. S.C. saw plaintiff's hand hit defendant's cheek but could not tell if she hit his hand. Defendant held plaintiff by her jacket collar and held her down in the chair. As plaintiff was "fighting" with defendant while seated in the chair, he released plaintiff after repeated requests to do so were made by S.C.

The court found plaintiff's testimony "mostly credible" because "she made good eye contact," did not embellish, and gave "straight answers" and "detailed" testimony. The court, however, found "there were points in the testimony where the evidence [contradicted] her testimony." Nonetheless, the court determined there was "some sort of contact" with plaintiff's neck and she sustained injuries to her body. In analyzing the first prong under Silver, the court concluded defendant had committed the predicate act of a simple assault. The court, however, did not consider plaintiff's allegation of any other crime involving risk of death or serious bodily injury under the PDVA.

A-2668-22

The court then addressed the second <u>Silver</u> prong and concluded that an FRO was not needed to protect plaintiff, finding "based on the testimony offered, there was nothing to support a finding that the defendant posed any sort of immediate danger." Accordingly, the court denied plaintiff's application for the FRO. She now appeals.

II.

Our review of an FRO issued after a bench trial is usually limited. <u>C.C. v. J.A.H.</u>, 463 N.J. Super. 419, 428 (App. Div. 2020). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." <u>Cesare v. Cesare</u>, 154 N.J. 394, 411-12 (1998); <u>see also</u> <u>Gnall v. Gnall</u>, 222 N.J. 414, 428 (2015). We defer to a trial judge's factual findings unless they are "'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" <u>Cesare</u>, 154 N.J. at 412 (quoting <u>Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am.</u>, 65 N.J. 474, 484 (1974)); <u>see also</u> <u>C.C.</u>, 463 N.J. Super. at 428. However, we review a trial judge's legal conclusions de novo. <u>C.C.</u>, 463 N.J. Super. at 429.

A trial judge is, however, required to make specific findings of fact and state his or her conclusions of law. <u>R.</u> 1:7-4(a); <u>see also</u> <u>Shulas v. Estabrook</u>,

A-2668-22

385 N.J. Super. 91, 96 (App. Div. 2006) (requiring an adequate explanation of the basis for a court's action). "Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'" Gnall, 222 N.J. at 428 (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)). Thus, although our standard of review is generally limited, where inadequate factual findings are made or where issues are not addressed, we are constrained to vacate the order and remand for further proceedings. Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015).

Domestic violence occurs when an adult or emancipated minor commits one or more acts on a person protected under the PDVA. N.J.S.A. 2C:25-19(a). When determining whether to grant an FRO, a trial judge must engage in a two-step analysis. Silver, 387 N.J. Super. at 125-26. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Id. at 125; see also N.J.S.A. 2C:25-29(a) (providing that an FRO may only be granted "after a finding or an admission is made that an act of domestic violence was committed"). Second, the court must determine that a restraining order is necessary to provide protection for the victim. Silver, 387

7

N.J. Super. at 126-27.  As part of that second step, the judge must assess "whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse."  J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 127).

Focusing on the second prong, we hold that the trial court failed to adequately evaluate plaintiff's request for the protection of an FRO.  Plaintiff testified that she was in "fear" of defendant because he had "anger issues" and was "furious" that she had obtained the TRO.  Nevertheless, the trial court appeared to have disregarded that unrebutted testimony and without explanation disregarded plaintiff's claims of immediate fear.  So, the trial court's finding that plaintiff did not need an FRO was "inconsistent with the competent, relevant, and reasonably credible evidence" in the record.  Cesare, 154 N.J. at 412.

Moreover, the trial court failed to properly analyze the factors in N.J.S.A. 2C:25-29(a)(1) to (6).  The trial court did not consider plaintiff's fear and concern for her safety, the prior history between the parties, and the best interests of plaintiff and the child as part of its review of the non-exhaustive factors listed in N.J.S.A. 2C:25-29.

A-2668-22

The order denying plaintiff's application for an FRO is vacated, the TRO is reinstated, and the matter is remanded for a new trial. On remand, we direct that a different judge conduct the retrial because the first judge made credibility findings. See, e.g., R.L. v. Voytac, 199 N.J. 285, 306 (2009) (explaining that "[b]ecause the trial court previously made credibility findings, [it may be] appropriate that the matter be assigned to a different trial court").

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2668-22