# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2734-22

IN THE MATTER OF P.D.B.,[1]
an alleged incapacitated person.

Argued September 11, 2024 – Decided October 8, 2024

Before Judges Currier, Marczyk and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. P-20-01811.

Kelly M. McGuire argued the cause for appellant P.D.B. (Disability Rights New Jersey, attorneys; Melissa Zeidler and Kelly M. McGuire, on the briefs).

Gomperts McDermott & Von Ellen, LLC and Manes & Weinberg, LLC, attorneys for respondent Margaret Marran (Marisa Lepore Hovanec and Beth C. Manes, of counsel and on the brief).

Weiss Law, LLC and Thomas F. Coleman (Spectrum Institute) of the California bar, admitted pro hac vice, attorneys for amici curiae Spectrum Institute,

---

[1] Pursuant to Rule 1:38-3(e), we use initials to protect the confidentiality of the individuals in this guardianship proceeding.

Easterseals New Jersey, The Arc of New Jersey, American Academy of Developmental Medicine and Dentistry, Quality Trust for Individuals with Disabilities, Inc., Mental Health Advocacy Services, New Jersey State Office of the Public Defender, Autistic Self Advocacy Network, Center for Estate Administration Reform, and Alternatives to Guardianship Project (Thomas F. Coleman and Nina E. Weiss, on the brief).

Elyla Huertas argued the cause for amici curiae American Civil Liberties Union of New Jersey, American Civil Liberties Union, and Community Health Law Project (American Civil Liberties Union of New Jersey Foundation, attorneys; Elyla Huertas, Alexander Shalom, and Jeanne LoCicero, on the brief).

PER CURIAM

P.D.B. appeals from the February 9, 2023 order that, despite dismissing the guardianship complaint, nevertheless imposed continuing conditions upon him. Because there was no finding of incapacity under N.J.S.A. 3B:1-2 prior to the dismissal of the complaint, the Chancery Division no longer retained jurisdiction over P.D.B. Therefore, we reverse the February 9, 2023 order and subsequent April 24, 2023 order denying reconsideration.

P.D.B. turned eighteen on December 17, 2020. On December 10, 2020, P.D.B.'s mother, M.M., filed a verified petition to be appointed as P.D.B.'s guardian and to allow her to "engage in Medicaid planning" on P.D.B.'s behalf.

The complaint included two certifications from medical professionals. In his answer, P.D.B. requested a jury trial.

The Chancery Division issued an order on January 19, 2021 appointing a guardian ad litem (GAL) for P.D.B. and granting the GAL access to P.D.B.'s medical records. The order further required P.D.B. to continue attending his weekly psychiatrist appointments as well as twice-a-week Zoom sessions with M.M. and compelled the parties to discuss reunification therapy. The judge also permitted M.M. to communicate with P.D.B.'s psychiatrist and ordered P.D.B. to cooperate with any evaluator retained by M.M.

The court subsequently granted the GAL authority to make P.D.B.'s educational decisions, including attending a high school IEP meeting, sharing the parents' positions at the meeting, and obtaining a recording of the meeting afterwards.

The GAL submitted a report to the court in October 2021. The GAL concluded that P.D.B. did not need a general guardian because he could make certain decisions himself. However, he recommended a limited guardian be appointed to make medical, financial, and educational decisions. The GAL advised that P.D.B. could participate in the decision making, but the final decisions in those areas should be made by a limited guardian.

A-2734-22

In January 2023, the GAL submitted an updated report. He explained he had limited interactions with P.D.B. in the previous year and had recently visited the home where he lived with his father.[2] The GAL found P.D.B., who was then twenty years old, was appropriately dressed, and in the time between reports, did not have any law enforcement interactions, medical conditions, issues with substance abuse, attendance problems at school, or violent behavior or mental breakdowns. The GAL noted P.D.B. was "staunchly opposed" to the appointment of a guardian and having any contact with M.M.

The GAL noted P.D.B. had graduated from high school and was taking advanced psychology and English classes at the community college. P.D.B. told the GAL he had made friends at school, joined a club, and was improving his social awareness. The GAL observed P.D.B.'s communication and conversation skills had improved in the time he had known him. The GAL described P.D.B. as "direct, focused and articulate."

The GAL stated P.D.B. was "consumed" by the litigation, which was causing him "tremendous anxiety and stress." P.D.B. described difficulty with sleeping and told the GAL "he lives in fear of being found to be incompetent."

---

[2] P.D.B.'s parents were divorced prior to the guardianship proceedings.

A-2734-22

He also expressed concern that M.M. or a guardian may try "to have him committed to a mental institution."

Although the GAL noted P.D.B. had functioned well in his daily activities without a guardian for the prior two years and was accepting guidance from his father and others he trusted, nevertheless he thought P.D.B. had "psychiatric vulnerabilities" that could expose him to exploitation. The GAL left the issue of P.D.B.'s capacity and his need for a general guardian to a jury.

On January 30, 2023, M.M. withdrew her complaint. In her letter to the court, she stated that because of P.D.B.'s non-cooperation with her and the difficulty gathering information about his current level of functioning, she had "substantial concerns that she w[ould] not be able to meet her burden of proof." In addition, after reviewing the GAL's updated report and the psychiatrist's records, she believed the litigation was having a deleterious effect on P.D.B. and wanted to end the case.

Thereafter, the GAL advised the court there was no longer a plaintiff in the matter but acknowledged the conflicting experts' reports about P.D.B.'s competency. The GAL explained that in certain instances involving an alleged incompetent, a special guardian could be appointed to continue pursuing the

guardianship, such as in In re Schiller, 148 N.J. Super. 168 (Ch. Div. 1977), where the court relied on its parens patriae jurisdiction.

However, the GAL did not recommend the court appoint a special guardian and did not believe P.D.B. was "in imminent danger or that he would be a threat to society without the appointment of a [g]uardian." He recommended the court dismiss the case with any stipulations it determined appropriate.

The court dismissed the complaint without prejudice in an oral decision on February 7, 2023, and a memorializing February 9, 2023 order. In the order, the court imposed the following conditions for an additional two-year period: the GAL would meet with P.D.B. once every six months and provide a report to the court and P.D.B.'s parents regarding P.D.B.'s "school work (if any), social activities and medical circumstances, inclusive of his continued therapy"; the parents would equally pay for the GAL's future fees; the GAL would continue to have HIPPA authorization to communicate with P.D.B.'s therapist; P.D.B. would participate in the meetings with the GAL; and P.D.B. would continue attending therapy.

P.D.B. moved for reconsideration to eliminate the conditions imposed in the February 9 order. He contended the trial court exceeded its authority and

6

violated his constitutional rights in imposing any conditions without a finding of incapacity and after the dismissal of the complaint. P.D.B. provided the court with executed documents appointing his father as power of attorney if P.D.B. became disabled, incapacitated, confined or detained by a foreign power, or disappeared, and designating his father, uncle, and father's friend as P.D.B.'s supporters to assist him in making decisions.

In a written decision issued April 24, 2023, and an accompanying order, the court denied the motion for reconsideration, but modified the order to require the GAL to submit his reports only to P.D.B.'s parents and not to the court.

The court explained it relied on Dr. Jonathan Mack's updated report in dismissing the case. Dr. Mack, Psy.D., was appointed by the court after the parties presented conflicting expert reports regarding the issue of P.D.B.'s capacity. Dr. Mack concluded that P.D.B. did not have capacity but acknowledged his cognitive skills had improved since the time of the expert's first report.

The court also explained that Rule 4:37-1(b) permitted the imposition of conditions. The court stated this was an unusual case because there was sufficient information from P.D.B.'s mother and treating doctors to commence litigation for a guardianship. In addition, Dr. Mack found, in two reports, that

7

P.D.B. did not have capacity. The court expressed concern about P.D.B.'s future mental health, but also noted the anxiety the litigation was causing him.

The court relied on its parens patriae authority to impose the conditions, stating the meetings with the GAL were intended to check on P.D.B.'s mental health and it was not appropriate to completely dismiss the case considering Dr. Mack's reports. Therefore, after revising the order as stated, the court denied reconsideration.

On July 14, 2023, the Chancery Division granted P.D.B.'s motion to stay enforcement of the February 9, 2023 order pending appeal.

On appeal, P.D.B. contends the imposition of conditions violates the New Jersey and United States Constitutions as well as applicable New Jersey law, and the court abused its discretion in requiring P.D.B. to comply with certain conditions after dismissing the complaint.

We granted leave to the American Civil Liberties Union of New Jersey, the American Civil Liberties Union, and the Community Health Law Project to appear as amicus curiae. They contend the court violated P.D.B.'s due process rights because he did not have notice or an opportunity to argue the conditions were inappropriate. They also contend the conditions were compelled speech contrary to P.D.B.'s First Amendment rights and violated his right to choose

whether to receive medical care or not, in addition to violating the Americans with Disabilities Act, 42 U.S.C. §§ 12131-12134.

We also granted leave to Spectrum Institute, Easterseals New Jersey, The Arc of New Jersey, American Academy of Developmental Medicine and Dentistry, Quality Trust for Individuals with Disabilities, Inc., Mental Health Advocacy Services, New Jersey State Office of the Public Defender, Autistic Self Advocacy Network, Center for Estate Administration Reform, and Alternatives to Guardianship Project to appear as amici. The entities raised similar contentions and supported P.D.B.'s position.

In response, M.M. states she "takes no position" regarding the "legality of including conditions in orders of dismissal in a guardianship action." She defers to this court's determination but if the conditions are permitted, M.M. contends they were "reasonable and appropriate under the circumstances."

The issue before this court then is whether the trial court misapplied Rule 4:37-1(b) to support its authority in imposing conditions despite dismissing the complaint. "[W]e review the meaning or scope of a court rule de novo, applying 'ordinary principles of statutory construction to interpret the court rules.'" DiFiore v. Pezic, 254 N.J. 212, 228 (2023) (quoting State v. Robinson, 229 N.J. 44, 67 (2017)). "A trial court's interpretation of the law and the legal

consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

N.J.S.A. 3B:12-24 provides that a proceeding to determine capacity or for the appointment of a guardian can be conducted without a jury, unless a jury trial is demanded by the individual alleged to lack capacity or an individual on their behalf. Here, P.D.B. requested a jury trial to determine his incapacity.

N.J.S.A. 3B:12-24.1(a) explains a general guardian can be appointed if the individual meets the definition of N.J.S.A. 3B:1-2 and does not have the "capacity to govern [them]self or manage [their] affairs." N.J.S.A. 3B:1-2 defines an "[i]ncapacitated individual" as "an individual who is impaired by reason of mental illness or intellectual disability to the extent that the individual lacks sufficient capacity to govern himself and manage the individual's affairs." N.J.S.A. 3B:12-25 authorizes the Superior Court to appoint a guardian for an individual found to be incapacitated. The statute explains the court can consider "surrogate decision-makers" that were chosen by the incapacitated individual before they became incapacitated, such as through a durable power of attorney, health care proxy, or advance directive. Ibid.

Rule 4:86 also details the process of appointing a guardian and includes additional information, such as the requirements of a guardianship complaint and other accompanying documents and the rights of an incapacitated individual. According to Rule 4:86-4(d), a GAL may be appointed at any time before the entry of judgment when the court becomes aware of special circumstances. The GAL's role is to "evaluate the best interests of the alleged incapacitated person and to present that evaluation to the court." Ibid. The GAL's function is to be "'the eyes of the court' furthering the best interests of the [individual alleged to lack capacity]." S.T. v. 1515 Broad St., LLC, 241 N.J. 257, 278 (2020) (quoting In re Mason, 305 N.J. Super. 120, 127 (Ch. Div. 1997)).

Rule 4:37-1(b) permits the voluntary dismissal of an action "at the plaintiff's instance . . . by leave of court and upon such terms and conditions as the court deems appropriate." This court has explained that "[w]hether to dismiss with or without prejudice, whether to impose terms, and the crafting of terms that are fair and just in the circumstances, are all matters that lie within the court's sound discretion." Shulas v. Estabrook, 385 N.J. Super. 91, 97 (App. Div. 2006). However, "in exercising that discretion, the court is chiefly required

11

to protect 'the rights of the defendant.'" Ibid. (quoting Burke v. Cent. R.R. Co. of N.J., 42 N.J. Super. 387, 397-98 (App. Div. 1956)).

The court's discretion regarding the terms of the dismissal extends to whether it is with or without prejudice and whether to award counsel fees. See Mack Auto Imports, Inc. v. Jaguar Cars, Inc., 244 N.J. Super. 254, 258 (App. Div. 1990). As we have stated, "the obvious purport of our rule is to protect a litigant where a termination of the proceedings without prejudice will place him in the probable position of having to defend, at additional expense, another action based upon similar charges at another time." Shulas, 385 N.J. Super. at 97; see also Burns v. Hoboken Rent Leveling & Stabilization Bd., 429 N.J. Super. 435, 446 (App. Div. 2013) (explaining that "[d]espite the relatively scant judicial treatment of the contours of Rule 4:37-1, it is clear the purpose served by the rule is the prevention of 'intolerable manipulation of the [c]ourt's calendar and the defendants' resources.'") (quoting Shulas, 385 N.J. Super. at 101).

In its oral decision dismissing the complaint but imposing conditions, the trial court explained, after reviewing the GAL's recent report, Dr. Mack's updated report, and M.M.'s letter, it was not necessary to appoint a guardian to continue prosecuting the guardianship after M.M. withdrew her complaint. It reasoned Dr. Mack's report did not find P.D.B. to be cognitively incapacitated,

12

but also opined P.D.B. should not be allowed to govern his affairs. The court also noted the GAL's conclusion that P.D.B. would not be in danger or a threat to society without the appointment of a guardian. Nevertheless, the court relied on Rule 4:37-1(b) to impose the stated conditions.

In its written decision denying reconsideration, the court acknowledged the purpose of Rule 4:37-1(b) as expressed in caselaw but reasoned "the plain language of the [Rule] does not limit the conditions to those circumstances." It reiterated the unusual nature of the case and that there was sufficient information presented to initiate the guardianship action. The court again noted Dr. Mack's two reports opining that P.D.B. lacked capacity. While "reluctantly willing to dismiss the matter," the trial court relied on its parens patriae authority to impose the conditions because "it believed strongly that some follow up is necessary."

After a careful review, we are satisfied the Chancery Division's order contravenes the purpose of Rule 4:37-1(b) because the imposed conditions did not serve to avoid duplicative litigation or to preserve judicial efficiency or efficiency of resources. Shulas, 385 N.J. Super. at 97; Burns, 429 N.J. Super. at 445-46. Rather, the court imposed the conditions because of its concern for P.D.B.

Well-meaning as that may have been, the court misapplied its discretion in compelling P.D.B. to continue to comply with certain conditions. As our Supreme Court has stated, "The parens patriae power of our courts derives from the inherent equitable authority of the sovereign to protect those persons within the state who cannot protect themselves because of an innate legal disability." In re Grady, 85 N.J. 235, 259 (1981). Here, there was no finding of incapacity as the scheduled trial had not occurred. Therefore, the court mistakenly exercised its parens patriae power. Under these circumstances, the court had no authority to impose intrusive, onerous conditions.

Once M.M. withdrew her complaint for guardianship, and the court declined to appoint a special guardian, there was no authority to continue the GAL's appointment. Although the court is authorized to appoint a temporary GAL pending a hearing on a guardianship petition, see N.J.S.A. 3B:12-24.1(c), a general or limited guardian can be appointed only after a finding of incapacity. N.J.S.A. 3B:12-24.1(a) to (b).

Furthermore, the imposed conditions violated P.D.B.'s right to self-determination as established implicitly under the New Jersey Constitution, Article I, Paragraph 1. The Supreme Court has long recognized this right and the clear public policy respecting the rights of all people, including the

14

developmentally disabled. See In re M.R., 135 N.J. 155, 169-70 (1994). The conditions in the order of dismissal impermissibly usurped P.D.B.'s decision-making.

For similar reasons, the conditions infringed upon P.D.B.'s right to medical confidentiality, see Doe v. Poritz, 142 N.J. 1, 77-78 (1995), the protections afforded under the Health Insurance Portability and Accountability Act, Pub. L. 1996, ch. 104-91, and his right to due process, U.S. Const. amend. XIV, § 1; N.J. Const., art. I, ¶ 1. When a court acts under its parens patriae authority, its actions are still "bounded by constitutional procedural guarantees." In re Commitment of J.M.B., 197 N.J. 563, 598 (2009) (quoting In re Commitment of W.Z., 173 N.J. 109, 125-26 (2002)).

Reversed and remanded for the court to vacate its stay and enter a dismissal of the complaint with prejudice. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2734-22